IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE ROMERO, as Sister and
Next Friend of Alejandro Romero, Jr.,

        Plaintiff,

v.                                         No. CIV 15-0389 JB/SMV

Board of County Commissioners for the
County of Curry, Gerry Billy, Tori Sandoval,
and Ecipio Lucero,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for Leave to Intervene, filed

December 3, 2015 (Doc. 37)("Motion").   The primary issue is whether the Court should,

pursuant to rule 24(a) of the Federal Rules of Civil Procedure, allow Correct Care Solutions, the

company that provided medical services to the Curry County Detention Center, to intervene in

this case.  The case involves alleged civil rights violations against an inmate at the Curry County

Detention Center.  The Court will allow Correct Care to intervene because: (i) Correct Care's

Motion is timely; (ii) it has a sufficient interest in the litigation; (iii) that interest may be

impaired if it does not intervene; and (iv) the existing parties do not adequately represent its

interests.  The Court therefore grants Correct Care's Motion.

## FACTUAL BACKGROUND

Michelle Romero sues on behalf of her brother, Alejandro Romero, Jr.  See Complaint

for the Recovery of Damages Caused by the Deprivation of Civil Rights, filed May 6, 2015

(Doc. 1)("Complaint").[1]  M. Romero alleges that A. Romero "has a long history of mental illness and has been diagnosed with paranoid schizophrenia."  Complaint ¶ 14, at 3.  She states that, when "un-medicated, Alex has experienced psychotic episodes that have led to several arrests for misdemeanors, such as assault on a household member and criminal damage to property of a household member."  Complaint ¶ 15, at 3.  From 2009 to 2013, A. Romero was arrested and booked into the Curry County Detention Center four times.  See Complaint ¶ 16, at 3.

On each occasion, the Defendants -- Gerry Billy, the Administrator of the Curry County Detention Center until January, 2013; Tori Sandoval, the current Curry County Detention Center Administrator; and Ecipio Lucero,[2] a high-ranking official with supervisory duties at the Curry County Detention Center -- "placed Alex in a steel segregation cell due to his 'mental problems.'"  Complaint ¶ 17, at 3.  "After Alex spent months at a time isolated in solitary confinement following each arrest, the court would eventually dismiss the charges after declaring Alex incompetent to stand trial due to his mental illness."  Complaint ¶ 19, at 3.  Moreover, M. Romero alleges that, during his previous incarcerations, the "Defendants failed to ensure Alex was consistently taking his antipsychotic medication."  Complaint ¶ 29, at 4.  Correct Care "is the purchaser and successor in interest to Correctional Healthcare Companies, L.L.C., ("CHC")."  Motion ¶ 1, at 1.  It states that, during the period in 2012 to 2013 when A. Romero was incarcerated at the Curry County Detention Center, "CHC provided medical services to inmates at the Curry County Detention Center, pursuant to a contract with Presbyterian Health Services who, in turn, contracted with Defendant Board of County Commissioners for the County of Curry."  Motion ¶ 2, at 1-2.

---

[1]M. Romero refers to A. Romero in the Complaint as "Alex."  Complaint ¶ 2, at 1.

[2]Curry County employed Billy, Sandoval, and Lucero.  See Complaint ¶ 4, at 2.

A. Romero "spent seven months in the segregation cell under inhumane conditions" before being transferred to the New Mexico Behavioral Health Institute ("NMBHI").[3] Complaint ¶¶ 47-48, at 6.  During his stay at NMBHI, he "was reintroduced to human interaction and socialization," helping him to become "cooperative, polite, and displaying appropriate hygiene."  Complaint ¶¶ 55-56, at 6.

## PROCEDURAL BACKGROUND

M. Romero seeks damages for A. Romero's alleged violation of civil and constitutional rights under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Constitution of the United States of America.  See Complaint at 1.  She sues the Board of the County Commissioners for the County of Curry, State of New Mexico ("Curry County").  M. Romero asserts four claims against the Defendants.  In Count I, she alleges a violation of substantive due process under the Constitution of the United States based on the Defendants' inhumane treatment and inadequate medical care.  See Complaint ¶¶ 59-87, at 7-10.  In Count II, she asserts a claim for violation of procedural due process under the Constitution of the United States.  See Complaint ¶¶ 88-96, at 10-11.  In Count III, she alleges a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213.  See Complaint ¶¶ 97-113, at 11-12.  In Count IV, she contends that the Defendants had a "custom and policy of violating constitutional rights" by depriving the mentally ill of "adequate medical care and humane conditions of incarceration." Complaint ¶ 128, at 13.  From the Complaint, it appears as if M. Romero alleges each claim against every Defendant.

---

[3]The NMBHI "is the only state owned and operated psychiatric hospital in New Mexico. NMBHI is made up of five clinical divisions serving a wide range of public needs."  New Mexico Behavioral Health Institute, New Mexico Department of Health, http://nmhealth.org/about/ofm/ltcf/nmbhi/ (last visited January 17, 2016).

CCS filed its Motion seeking to intervene on December 3, 2014. See Motion at 1. On June 24, 2015, approximately one month after M. Romero filed the Complaint, Presbyterian Healthcare sent Correct Care an email "demanding a tender of defense and indemnification." Motion ¶ 6, at 2. See Email from Travis Collier, Associate General Counsel for Presbyterian Healthcare Services, to Brian Hamilton, Attorney for Correct Care at 1 (dated June 24, 2015), filed December 3, 2015 (Doc. 37-3)("Email Demanding Indemnification").

Correct Care argues that it may intervene, because it "claims an interest relating to the property or transaction that is the subject of the action," and that disposing of the action would impair its ability to protect its interests. Motion ¶ 7, at 2 (quoting Fed. R. Civ. P. 24(a)). It states that its interests are "adverse to both plaintiff and defendant." Motion ¶ 8, at 2. As to M. Romero, it "denies the Plaintiff's civil rights have been violated . . . ." Motion ¶ 9, at 3. Regarding the Defendants, it denies "that Defendants have a right to indemnification. Accordingly, Intervenor has an interest adverse to both Plaintiff and Defendant." Motion ¶ 9, at 3. Correct Care contends that, because its interests are adverse to both parties in the case, its "interest cannot be protected by any of the existing parties to this litigation." Motion ¶ 11, at 3. Finally, it states that "allowing the proposed intervention will not prejudice any of the current parties, as discovery has just begun, and no major motions have been filed." Motion ¶ 11, at 3.

Correct Care also attached to its Motion a proposed Complaint in Intervention, asserting its adverse interests to both parties and asserting an interest in the litigation. See Correct Care Solutions Complaint in Intervention, filed December 3, 2015 (Doc. 38-1). Specifically, it fleshes out its contractual relationship with Presbyterian Healthcare "to provide healthcare services to [the Curry County Detention Center]." Complaint in Intervention ¶¶ 10-11, at 2-3. It also outlines its claims and defenses against both M. Romero and the Defendants. See Complaint in

Intervention ¶¶ 17-18, at 3.   As its defense against M. Romero, it "denies that Defendants violated Plaintiff's brother's civil rights, and denies that Plaintiff is entitled to any relief." Complaint in Intervention ¶ 17, at 3.   As its defense against the Defendants, it asserts that, "to the extent that Defendants violated Plaintiff's civil rights, these violations did not fall within the scope of any indemnification agreement between Intervenor and Curry County and/or Presbyterian."   Complaint in Intervention ¶ 18, at 3.   Correct Care further states that it "did not have any control over the nature of the facilities used to provide such care."   Complaint in Intervention ¶ 23, at 4.   It "requests that this Honorable Court dismiss all claims against Defendants with prejudice or, in the alternative, issue a declaratory judgment stating that Correct Care is not required to indemnify Defendants for any judgment entered against them." Complaint in Intervention at 4.

M. Romero responded on December 18, 2015.   See Response to Motion for Leave to Intervene, filed December 18, 2015 (Doc. 39)("Response").   The Defendants do not oppose this Motion.   See Response at 1.   She contends that the "complaint in intervention, as it currently stands, fails to allege sufficient facts to support intervention."   Response at 2.   Her dispute with Correct Care's Motion is that it fails to allege "that a person it employed was responsible for the mental health care of Alex Romero during the relevant time period."   Response at 2.   She concedes, however, that, "if an individual employed by CCS, (or its predecessors), was responsible for the mental health care of Alex Romero then Plaintiff would likely have no grounds to object to the intervention."   Response at 2.   She argues that Correct Care can intervene only if it alleges that it employed a person with responsibility to provide A. Romero's care.   See Response at 2-3.

CCS replied on January 5, 2016.  See Reply in Support of Motion for Leave to Intervene, filed January 5, 2016 (Doc. 44)("Reply").  It argues that "it is well settled that a party against whom indemnification is requested has the right to intervene to protect its interest."  Reply at 1. It describes a case from the United States Court of Appeals for the Tenth Circuit, Alvarado v. J.C. Penney Co., 997 F.2d 803 (10th Cir. 1993)(Kelly, J.), in which the Tenth Circuit allowed a company to intervene, because the defendant sought indemnity from the company.  See Reply at 2 (citing Alvarado v. J.C. Penney Co., 997 F.2d at 804-05).  Correct Care asserts that its case "is substantially analogous to Alvarado."  Reply at 2.  It then repeats its assertions from the Complaint in Intervention and Motion describing how its interests are adverse to both M. Romero's and to the Defendants' interests.  See Reply at 3-5.

Finally, Correct care argues that "the fact that CCS did not name any particular individuals in its Complaint in Intervention is irrelevant."  Reply at 5.  It states that its exposure to liability stems from "a possible contractual obligation to indemnify the County if the medical care was inadequate, rather than the specific actions or inactions of any particular CCS employee."  Reply at 5.  It contends that Correct Care, not a particular individual, is subject to indemnification requirements.  See Reply at 5.  Consequently, Correct Care argues that it must intervene to protect its interests.  See Reply at 5.

## LAW REGARDING INTERVENTION AS OF RIGHT

Rule 24(a) provides for intervention of right:

(a) **Intervention of Right.**  On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing

> of the action may as a practical matter impair or impede the
> movant's ability to protect its interest, unless existing
> parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  The movant bears the burden of establishing its right to intervene.  See
United States v. Tex. E. Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991).  A court
generally may not consider concerns of judicial economy and efficiency when ruling on a request
to intervene as of right.  See United States v. Union Elec. Co., 64 F.3d 1152, 1158 & n.1 (8th
Cir. 1995)("We find that supplanting the standards applicable to intervention as of right under
Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case.");
In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991)("The district court, however, incorrectly
bolstered its denial of intervention of right by referring to concerns of judicial economy and need
for guidance.  Although those issues have a place in motions for permissive intervention, Rule
24(a) affords them no weight.").

       To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the
motion is timely; (ii) the movant claims an interest relating to the property or transaction which
is the subject of the action; (iii) the movant's interest relating to the property may be impaired or
impeded; and (iv) the movant's interest is not adequately represented by existing parties.  See
Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005).

       **1.    Timeliness.**

       "The timeliness of a motion to intervene is assessed in light of all the circumstances,
including the length of time since the applicant knew of his interest in the case, prejudice to the
existing parties, prejudice to the applicant, and the existence of any unusual circumstances."
Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M.
2008)(Browning, J.)(quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir.

2001)).  "Unusual circumstances" refers to those circumstances that would excuse the untimely

filing of a motion to intervene.  In re SEC, 296 F. App'x 637, 640 (10th Cir. 2008)(unpublished).

In measuring timeliness by the length of time that the applicant knew of its interest, the Tenth

Circuit looks to the point in time "when the movant was on notice that its interests may not be

protected by a party already in the case."  Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619

F.3d 1223, 1232 (10th Cir. 2010).

   **2.**   **Sufficient Interest.**

   "Under rule 24(a)(2), the applicants must claim . . . an interest relating to the property or

transaction which is the subject of the action."  Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1250

(internal quotation marks omitted).  "The Tenth Circuit requires that the interest be 'direct,

substantial, and legally protectable.'"  Forest Guardians v.  U.S. Dep't of Interior, No.  CIV-02-

1003, 2004 WL 3426413, at *5 (D.N.M. Jan. 12, 2004)(Browning, J.)(quoting Utah Assoc. of

Ctys. v. Clinton, 255 F. 3d at 1250).  The Tenth Circuit has also noted that the inquiry is "highly

fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits

by involving as many apparently concerned persons as is compatible with efficiency and due

process."  Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1251-52.  "The threshold for finding the

requisite legal protectable interest is not high."  Forest Guardians v.  U.S. Dep't of Interior, 2004

WL 3426413, at *5 (citing Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111,

1115 (10th Cir. 2002))("Furthermore, the Tenth Circuit has deemed the mere threat of economic

injury to be sufficient for granting intervention.").

   "[T]he federal judiciary has experienced considerable difficulty in defining the interest

necessary to satisfy Rule 24(a)(2) since the time of its 1966 amendment." Carl Tobias, Standing

to Intervene, 1991 Wis. L. Rev. 415, 432 (1991).  See Panola Land Buying Ass'n v. Clark, 844

F.2d 1506, 1523 (11th Cir.1988)(Clark, J., dissenting)("[N]o authoritative definition of this term has emerged."); Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)("We know of no concise yet comprehensive definition of what constitutes a litigable 'interest' for the purposes of standing and intervention under Rule 24(a)."), cited with approval in Jansen v. City of Cincinnati, 904 F.2d 335, 341 (6th Cir. 1990).  The Supreme Court of the United States has said that the interest must be "significantly protectable."   Donaldson v. United States, 400 U.S. 517, 528 (1971). Charles Wright, however, observes that "'significantly protectable interest' has not been a term of art in the law and there is sufficient room for disagreement about what it means . . . ." 7C C. Wright et al., Federal Practice and Procedure § 1908 (3d ed. 2015).

While some courts define "interest" narrowly, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005)(McKee, J.), the Tenth Circuit has interpreted rule 24(a) more broadly, see Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115 ("[O]ur court has tended to follow a somewhat liberal line in allowing intervention.").   In contrast with the Third Circuit, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d at 220 ("In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."), "the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention," Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.

The Tenth Circuit has described the interest test as "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."   San Juan Cty., Utah v. United States, 503 F.3d at 1195 (quoting Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d 837, 841 (10th Cir. 1996))(internal quotation marks omitted).  The Tenth Circuit has stated that this more lenient

view "best reflects the purpose of Rule 24(a)(2)."  San Juan Cty., Utah v. United States, 503 F.3d

at 1195.

> As the Advisory Committee Notes to the 1966 Amendment state, "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."  Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment); *see* Comm. on Rules of Practice and Procedure, Report, Ex. B, *supra* ("The effect of the amendment [to Rule 24] is to provide that if a person who would be affected *in a practical sense* by the disposition of an action is not joined as a party, he has a right to intervene unless he is adequately represented by an existing party.") . . . .

> As we understand Rule 24(a)(2), the factors mentioned in the Rule are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation. Those factors are not rigid, technical requirements.

San Juan Cty., Utah v. United States, 503 F.3d at 1195.  As a consequence, the Tenth Circuit

directs courts to "focus on the language and purpose of the Rule."  San Juan Cty., Utah v. United

States, 503 F.3d at 1195.  Other Courts of Appeal have correspondingly interpreted rule 24

broadly.  For example, the Sixth Circuit has stated that "interest" for the purposes of rule 24(a)

"is to be construed liberally."  Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir. 1987)(citing

Hatton v. Cty. Bd. of Educ. Of Maury Cty., Tenn., 422 F.2d 457, 461 (6th Cir. 1970)).

A source of particular disagreement has been "[w]hether an interest contingent upon the

outcome of other pending litigation constitutes a 'significantly protectable interest[.]'"  Teague v.

Bakker, 931 F.2d 259, 261 (4th Cir. 1991)(Chapman, J.).  Some courts have denied intervention

when an intervenor's interest is contingent upon future events, like winning a separate lawsuit.

See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 105 F.R.D. 106, 110 (D.D.C.

1985)(Flannery, J.).  They contend that, without "a present, non-contingent interest" in the case

in which the intervenor seeks to intervene, the intervenor lacks the "'significantly protectable

interest' required for intervention as of right."  Indep. Petrochemical Corp. v. Aetna Cas. & Sur.

Co., 105 F.R.D. at 110.

- 10 -

As a rejoinder to this reasoning, other courts, including the Tenth Circuit, have concluded that "the contingent nature of the movant's interest is certainly an important factor which should influence the court in its determination as to the appropriateness of intervention, [but] this one factor alone should not be determinative." New Hampshire Ins. Co. v. Greaves, 110 F.R.D. 549, 552 (D.R.I. 1986)(Pettine, J.).  See San Juan Cty., Utah v. United States, 503 F.3d at 1203 ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation.")(quoting United States v. Union Elec. Co., 64 F.3d 1152 1162 (8th Cir. 1995)); St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129, 134 (N.D. Ohio 1992)(Bell, J.).  "There is nothing in the wording or history of Rule 24 which indicates intent to exclude would be intervenors whose interest in the pending litigation is not yet vested.  In many instances, such exclusion would seem highly inappropriate and unjust."  New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  Moreover, allowing an intervenor with a contingent interest to intervene will usually only strengthen the litigation, making the parties' presentation of the issues more sharply focused:

> Surely it runs counter to our notions of fairness and justice to find that the company would be harmed by being forced to face a stronger, more vigorous opposition.  The role of this court and the judicial process is to reach a just and equitable resolution based on the facts, a task which can only be aided and served by the assistance of the strongest possible arguments by counsel.

New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  See also Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991)(expressly adopting this reasoning).

In line with this reasoning, the Tenth Circuit and numerous other Courts of Appeal have permitted intervenors with a contingent interest to intervene.  For instance, in Security Insurance Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377 (7th Cir. 1995), the Seventh Circuit permitted

a church suing an architect to intervene in a suit by the architect's insurer for a declaratory judgment that it had no obligation to defend or indemnify the architect, whose only significant asset was the insurance policy.  See 69 F.3d at 1380-81.  The church's economic interest was contingent upon its ability to win its lawsuit against the architect.  See 69 F.3d at 1380-81. Despite the church's contingent interest, the Seventh Circuit affirmed the district court order permitting intervention.  See 69 F.3d at 1380-81.

Similarly, the Eighth Circuit has also interpreted rule 24 to allow intervention when the intervenor's interest is not directly at issue.  See Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861 (8th Cir.1977)(Gibson, J.).

> In *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977), for example, a group of homeowners was allowed to intervene in an action involving the constitutionality of a municipal ordinance which placed a temporary moratorium on the operation of abortion clinics.  The potential loss in the market value of the intervenors' homes constituted a sufficient "interest" under Rule 24(a)(2) even though three events would have had to take place before the homeowners experienced any actual loss: (1) the city had to lose the court fight on the constitutionality of the ordinance, (2) the abortion clinic had to open, and (3) the clinic's operation had to lead to a reduction in the homeowners' property values.

San Juan Cty., Utah v. United States, 503 F.3d at 1197-98 (quoting SEC v. Flight Transp. Corp., 699 F.2d 943, 948 (8th Cir. 1983)).

Furthermore, the Fifth Circuit affirmed a judgment permitting an insurer to intervene to appeal a judgment against its insured.  See Ross v. Marshall, 426 F.3d 745, 757 (5th Cir. 2005)(describing the interest test as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process").  The Fifth Circuit observed that "an insurer has a financial stake in securing a favorable outcome for its insured in a lawsuit alleging potentially covered claims," even though "some contingency remains in that [the insurer] may still avoid liability if it prevails in its coverage action."  426

F.3d at 757-59.  The Fifth Circuit found "this contingency insufficient to preclude intervention." 426 F.3d at 759.  "The court appeared more interested in practical matters . . . ."  San Juan Cty., Utah v. United States, 503 F.3d at 1198.

Like these other Courts of Appeal, the Tenth Circuit has determined that an economic interest, which may be contingent upon future events, can constitute a sufficient interest to allow intervention.  See National Farm Lines v. Interstate Commerce Commission, 546 F.2d 381, 384 (10th Cir. 1977)(permitting intervention when a lawsuit would subject the intervenors to "unregulated competition"); Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115-16 (concluding that a trade association had a sufficient interest when a lawsuit's resolution could result in the potential loss of government contracts).  In allowing intervention in San Juan County, Utah v. United States, the Tenth Circuit expressly stated that "intervention may be based on an interest that is contingent upon the outcome of the litigation."  San Juan Cty., Utah v. United States, 503 F.3d at 1203.  In San Juan County, Utah v. United States, the Tenth Circuit limited its opinion in City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp., 79 F.3d 1039, 1042 (10th Cir. 1996), which suggested that some contingent interests were not sufficient to permit intervention.  See San Juan Cty., Utah v. United States, 503 F.3d at 1202-03.  Instead, the Tenth Circuit stated that it "do[es] not read [City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp.] to say that every contingent interest fails to satisfy Rule 24(a)(2). . . .  KAMO's problem was that its interest was *too* contingent, *too* indirect, and hardly substantial . . . ."  San Juan Cty., Utah v. United States, 503 F.3d at 1203.  See Design Basics, LLC v. Estate of Aus, 2014 WL 65754, at *3 (D. Kan. 2014)(O'Hara) (stating that the Tenth Circuit has affirmed "that not *every* contingent interest fails to satisfy Rule 24(a)(2)")(emphasis in original)(citing San Juan Cty., Utah v. United States, 503 F.3d at 1202).  The Tenth Circuit concluded: "Although the

intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan Cty., Utah v. United States, 503 F.3d at 1203.

###### 3.      Impairment of Interest.

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." WildEarth Guardians v. U.S. Forest Serv., 573, F.3d 992, 995 (10th Cir. 2009)("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan Cty., Utah v. United States, 503 F.3d 1163, 1203 (10th Cir. 2007)(en banc). A third-party's interest may be impaired "when the resolution of the legal questions in the case effectively foreclose [sic] the rights of the intervenor in later proceedings, whether through res judicata, collateral estoppel, or stare decisis." Ute Distrib. Corp. v. Norton, 43 F. App'x 272, 279 (10th Cir. 2002)(unpublished).

###### 4.      Inadequate Representation.

"Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate." Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *6. "The most common situation in which courts find representation adequate arise when the objective of the [movant] is identical to that of one of the parties." Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872-73 (10th Cir. 1986). The Tenth Circuit has found, however, that the "possibility of

divergence of interest need not be great in order to satisfy the burden of the applicants." Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 845 (10th Cir. 1996). This minimal burden is further reduced when it is the government that is supposed to adequately represent the potential intervenor's interest. See Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1254-1255. "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be-intervenor's particular interest." Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255. The Tenth Circuit stated:

> [T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255-56. Thus, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255.

## LAW REGARDING PERMISSIVE INTERVENTION

Rule 24(b) provides for permissive intervention:

(1)     **In General.** On timely motion, the court may permit anyone to intervene who:

    (A)     is given a conditional right to intervene by a federal statute; or

    (B)     has a claim or defense that shares with the main action a common question of law or fact.

(2)    **By a Government Officer or Agency.**  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

  (A)    a statute or executive order administered by the officer or agency; or

  (B)    any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3)    **Delay or Prejudice.**  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).  The movant bears the burden of establishing its right to intervene.  See United States v. Tex. E. Transmission Corp., 923 F.2d at 414.  "Unlike Rule 24(a), which governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  6 James W. Moore, Moore's Federal Practice § 24.10[1], at 24-63 (3d ed. 2012)(citation omitted).  Accord In re Sierra Club, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.  Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").   "The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal."  6 Moore, supra, § 24.10[1], at 24-63.  "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention."  6 Moore, supra, § 24.10[1], at 24-63. Accord Garza v. Cty. of L.A., 918 F.2d 763, 777 (9th Cir. 1990)("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation."   San Juan Cty., Utah v. United States, 503 F.3d at 1207. Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse.  See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d 1424, 1427 (10th Cir. 1990).  As the Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *10-11.  Rule 24(b)(3) requires the court to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention.  See Fed. R. Civ. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259. While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.  See City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

## ANALYSIS

To intervene, Correct Care must show that: (i) its Motion is timely; (ii) it claims an interest relating to the property or transaction which is the subject of the action; (iii) its interest relating to the property may be impaired or impeded; and (iv) its interest is not adequately represented by existing parties.  See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d 1091,

1103 (10th Cir. 2005).   Correct Care has shown that it meets each of these requirements. Moreover, even if Correct Care could not demonstrate its ability to intervene as of right, the Court would allow permissive intervention under rule 24(b).

## I.   CORRECT CARE HAS SHOWN THAT IT IS ENTITLED TO INTERVENE AS OF RIGHT.

First, Correct Care demonstrates that its Motion is timely.  Discovery has just begun, and the parties have filed no major motions.  Accordingly, neither the parties nor Correct Care will suffer any prejudice from Correct Care's intervention.   See Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. at 245 (describing the factors that the Court must consider when assessing a motion's timeliness under rule 24(a)).   Although CCS waited several months before filing its Motion, the question of a motion's timeliness is left to a trial court's sound discretion.   See Lumberman's Mut. Cas. Co. v. Rhodes, 403 F.2d 2, 5 (10th Cir. 1968), cert. denied, 394 U.S. 965 (1969).   When the Court considers the time delay in light of the case's progression and lack of prejudice to the parties, it concludes that the Motion is timely.   See Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1250 (stating that "[t]he timeliness of a motion to intervene is assessed in light of all the circumstances")(internal quotation marks omitted).

Second, pursuant to rule 24(a)'s requirements, Correct Care "claims an interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a).  Specifically, Correct Care is the successor in interest to Correctional Healthcare, the company that provided medical services to inmates at the Curry County Detention Center during the relevant time period.   See Motion ¶¶ 1-2, at 1-2.  Correctional Healthcare had a contractual obligation with Presbyterian Healthcare and Curry County to provide medical care.   See Complaint in Intervention ¶¶ 10-11, at 2.   Medical services include mental health care.   See Reply at 2. Correct Care has an indemnity agreement with Presbyterian Healthcare that requires it to

indemnify Presbyterian Healthcare for any liability regarding A. Romero's detention.   See Motion ¶¶ 2-4, at 1-2.   Presbyterian Healthcare has already demanded that Correct Care indemnify it.   See Motion ¶ 4, at 2.   Correct Care does not contend that the indemnification agreement is defective.

The Tenth Circuit has concluded that an economic interest, which may be contingent upon future events, can constitute a sufficient interest to allow intervention as long as it is not "wholly remote and speculative."   San Juan Cty., Utah v. United States, 503 F.3d at 1203.   See Nat'l Farm Lines v. Interstate Commerce Comm'n, 546 F.2d at 382-84; Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115-16.   In National Farm Lines v. Interstate Commerce Commission,

> representatives of motor vehicle common carriers sought to intervene in an action to declare a section of the Interstate Commerce Act and regulations promulgated under it unconstitutional.   The representatives alleged that a decision adverse to the interest of the carriers would "render unenforceable a statutory scheme which directly protects their economic interests and would, as a result, subject them to unregulated competition which would be highly injurious."   564 F.2d at 382.   We reversed the district court's denial of intervention.   Id. at 384.

Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115-16.   Even though the intervenors' economic harm was not precisely measurable, the Tenth Circuit found that their interest was not too speculative and, therefore, sufficient for them to intervene.   See Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d at 382.   Likewise, in Utahns for Better Transportation v. U.S. Department of Transportation, the Tenth Circuit allowed a trade association for people in the transportation industry to intervene in a case by environmentalists seeking to nullify the United States Department of Transportation's plans.   See 295 F.3d at 1115-16.   The Tenth Circuit concluded that the trade association's potential loss of contracts and inability to receive future contracts was a sufficient interest.   See 295 F.3d at 1115-16.

Finally, in Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 578 F.2d 1341 (10th Cir. 1978), potential recipients of licenses to operate New Mexico uranium mills sought to intervene in an action by environmentalists against government agencies seeking to prohibit the agencies from issuing licenses without first preparing environmental impact statements.  See Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 578 F.2d at 1346.  The Tenth Circuit first observed that the outcome of the litigation could have a profound economic effect on the would-be intervenors.  This economic effect gave them an interest within rule 24(a)(2)'s meaning.  See 578 F.2d at 1344-45.  Even though the potential license recipients did not already possess the licenses, making their interests contingent upon the government agencies' future grants of licenses, the Tenth Circuit nonetheless determined that their interests were sufficient to support intervention. See 578 F.2d at 1346.  "Strictly to require that the movant in intervention have a *direct* interest in the outcome of the lawsuit strikes us as being too narrow a construction of Rule 24(a)(2)." Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n, 578 F.2d at 1344 (emphasis in original).  The Tenth Circuit further stated:

> There are other reasons for allowing intervention.  There is some value in having the parties before the court so that they will be bound by the result.  American Mining Congress represents a number of companies having a wide variety of interests.  This can, therefore, provide a useful supplement to the defense of the case.

578 F.2d at 1346.

The same conclusion is true here.  That Correct Care's liability is contingent upon M. Romero winning her lawsuit is irrelevant.  "Otherwise, every application to intervene on the side of one of the parties would be rejected on the ground that the aligned party might win (and the applicant's interest would hence not be injured)."  San Juan Cty., Utah v. United States, 503 F.3d

- 20 -

at 1200.  Correct Care has a sufficient interest in this lawsuit, because the indemnity agreement, which Curry County has already demanded that Correct Care pay, exposes Correct Care to significant liability.  See San Juan Cty., Utah v. United States, 503 F.3d at 1200 (concluding that an environmental group had a sufficient interest, even if the party with which it was aligned -- the State -- won the lawsuit, because the State might later pursue actions that would harm the group's interests); Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n, 578 F.2d at 1346.  Although Correct Care's liability is contingent upon a finding that Correct Care must indemnify the Defendants, Correct Care's interest is significant and not wholly speculative.  See San Juan Cty., Utah v. United States, 503 F.3d at 1202 (describing a proposed intervenor's interest as too speculative when "its interest was *too* contingent, *too* indirect, and hardly substantial: it would suffer injury only if an adverse decision (leading to the condemnation of the distribution facilities) would reduce the revenues KAMO received from Ozarks so much as to create substantial increased costs to KAMO's other customers")(emphasis in original).

Moreover, the pragmatic reasons that the Tenth Circuit considers suggest that the Court should allow intervention.  "The goal of 'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process'" is met here.  San Juan Cty., Utah v. United States, 503 F.3d at 1198 (quoting Ross v. Marshall, 426 F.3d at 757).  Allowing Correct Care to intervene will not make the litigation become overly complex; both the Defendants and Correct Care make the same argument that no one violated A. Romero's rights.  Additionally, allowing Correct Care into the lawsuit would only sharpen the issues' presentation:

> Surely it runs counter to our notions of fairness and justice to find that the company would be harmed by being forced to face a stronger, more vigorous opposition.  The role of this court and the judicial process is to reach a just and equitable resolution based on the facts, a task which can only be aided and served by the assistance of the strongest possible arguments by counsel.

New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  See Teague v. Bakker, 931 F.2d at 261.

For these reasons, other courts have allowed insurers to intervene as of right when a plaintiff

sues their insured.   See McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir.

1970)(Goldberg, J.)(allowing an insurer to intervene); Design Basics, LLC v. Estate of Aus,

2014 WL 65754, at *3 (D. Kan. 2014)(O'Hara, J.); Hartford Fire Ins. Co. v. Mitlof, 193 F.R.D.

154, 161 (S.D.N.Y. 2000)(Conner, J.)(concluding that a secondary insurer, which was providing

a defense in the underlying personal-injury action, had a sufficient interest in the determination

whether the primary insurer was obligated to indemnify the insureds to justify the secondary

insurer's intervention in the primary insurer's declaratory judgment action seeking to void the

policy).

　　In short, the Tenth Circuit has concluded that "the threat of economic injury from the

outcome of litigation undoubtedly gives a petitioner the requisite interest."   Utahns for Better

Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.  Liability through indemnity agreements

constitutes a threat of economic injury.  San Juan Cty., Utah v. United States, 503 F.3d at 1203

(stating that contingent interests may be sufficient).   Accordingly, the Court concludes that

Correct Care claims a sufficient interest.  See Design Basics, LLC v. Estate of Aus, 2014 WL

65754, at *3; Citizens Bank v. Stokes Chevrolet, Inc., 2000 WL 3439109, at *2 (W.D. Wis.

2000)(Crabb, J.)(allowing an insurer to intervene when the potentially liable party alleged that

the insurer had to indemnify the party for any liability).

　　Third, Correct Care has shown that its interest may be impaired if it does not join the

lawsuit.  This inquiry is intertwined with the existence of an interest.  See Utah Ass'n of

Counties v. Clinton, 255 F.3d at 1253.  "[T]he intervention may be based on an interest that is

contingent upon the outcome of the litigation."  San Juan Cty., Utah v. United States, 503 F.3d at

1203.  District courts within the Tenth Circuit have found that potential liability for indemnity is a "sufficiently protectable interest to warrant intervention" and may be impaired if the party does not participate in the lawsuit.  Alvarado v. J.C. Penney Co., Inc., 1990 WL 78545, *1 (D. Kan. 1990)(Rogers, J.), affirmed on other grounds in Alvarado v. J.C. Penney Co., Inc., 997 F.2d 803 (10th Cir. 1993).   Here, Correct Care may have to indemnify Presbyterian Healthcare if the Defendants are found liable on the basis that the medical care was inadequate.  If it does not intervene to defend itself and assert that any civil rights violations occurred as a result of the Defendants' facility rather than Correct Care's provision of medical services, there may not be another opportunity.   Thus, its interests may be impaired if it does not intervene and defend against Romero's claim.

Fourth, Correct Care demonstrates that the existing parties do not adequately represent its interests.   A similar Tenth Circuit case demonstrates why the Defendants, who demand indemnification from Correct Care, will not adequately represent Correct Care's interests.   In Alvarado v. J.C. Penney Co., Inc., defendant J.C. Penney Co., Inc. attempted to require Milco Industries, Inc. to indemnify it because it asserted that Milco Industries manufactured the defective product that was the subject of the lawsuit.  See 997 F.2d at 804; Alvarado v. J.C. Penney Co., Inc., 1990 WL 78545, *1 (explaining that Milco Industries moved to intervene after it received a letter from J.C. Penney notifying it "that Penney would seek to invoke the provisions of K.S.A. 84-2-607 in a future indemnity action" against it).  Milco Industries sought to intervene pursuant to rule 24(a) on the basis that its interests were adverse to both the plaintiff and the defendant.  See 997 F.2d at 805 (observing that Milco Industries asserted that it "has no liability in this matter either to plaintiff or defendant J.C. Penney Company, Inc."); 1990 WL 78545, *2.  Milco Industries' interests were adverse to the plaintiff's because it contended that

the statute of limitations had run, preventing it from being liable to the plaintiff.  See 997 F.2d at

805.  Its interests were adverse to defendant J.C. Penney's because it asserted that it was not

liable to indemnify J.C. Penney.  See 997 F.2d at 805.  The United States District Court for the

District of Kansas concluded that Milco Industries was "not adequately represented by the

existing parties to this action," because "Penney will not provide adequate representation of the

interests."  1990 WL 78545, at *2.  Considering other issues on appeal, the Tenth Circuit stated

that, because Milco Industries' intervened pursuant to rule 24(a), it had a right to fully participate

in the litigation.

   This case is similar to the situation in Alvarado v. J.C. Penney Co., Inc.  Just as defendant

J.C. Penney demanded indemnification from Milco Industries in Alvarado v. J.C. Penney Co.,

Inc., Curry County has indirectly demanded indemnification from Correct Care through its

contractor Presbyterian Healthcare.  See Complaint in Intervention ¶¶ 14-16, at 3.  Furthermore,

as Milco Industries' interests were adverse to both parties, Correct Care's interests are adverse to

both existing parties.  Correct Care's interests are adverse to M. Romero because it contends that

no one violated A. Romero's civil rights.  See Complaint in Intervention ¶ 17, at 3.  In the

alternative, Correct Care asserts that, to the extent A. Romero's civil rights were violated, it was

not responsible for the violation.  See Complaint in Intervention ¶¶ 22-23, at 4.  Correct Care's

interests are therefore also adverse to the Defendants' interests.  See Reply at 3.  Accordingly,

Correct Care's interests are adverse to both M. Romero and the Defendants.  As the Court has

previously stated, the burden of showing inadequate representation "is the 'minimal' one of

showing that representation 'may' be inadequate."  Forest Guardians v.  U.S. Dep't of Interior,

2004 WL 3426413 at *6.  See also Coal. Of Arizona/New Mexico Ctys. for Stable Econ. Growth

v. Dep't of Interior, 100 F.3d at 845 (observing that the "possibility of divergence of interest

need not be great in order to satisfy the burden of the applicants"). Because Correct Care's interests are adverse to both parties' interests, neither M. Romero nor the Defendants will have an incentive to adequately protect Correct Care's interests.

Finally, that Correct Care's Complaint in Intervention does not name any individuals is irrelevant to its intervention. Correct Care's exposure lies in its obligation to indemnify Curry County if the Court determines that the medical care was inadequate. <u>See</u> Complaint in Intervention ¶¶ 10-11, at 2-3 (stating that Correctional Healthcare contracted with Presbyterian Healthcare to provide healthcare services). In other words, its liability stems from the contract, not a tort committed by one of Correct Care's employees. Correct Care, rather than any particular individual, is subject to any alleged indemnification requirements that exist. M. Romero is trying to use her Response to get free discovery. Identification of witnesses or people involved can wait until the appropriate time. Curry County could provide more details in its pleading, but it gives enough to state a claim. Accordingly, Correct Care -- not any of its employees -- is a proper party to intervene.

## II.   EVEN IF CORRECT CARE CANNOT INTERVENE AS OF RIGHT, IT IS ENTITLED TO INTERVENE PURSUANT TO RULE 24(b).

Correct Care contends that, even if it cannot intervene under rule 24(a), it may do so under rule 24(b)(1). <u>See</u> Motion at 3. It states that "it has a defense to the instant action on the grounds that Plaintiff's brother's civil rights were not violated." Motion at 3. Furthermore, it contends that it "shares a common question of law with the main action," so the Court should permit it to intervene. Motion at 3.

Rule 24(b) allows permissive intervention when: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original

parties' rights.  See Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10 (citing Fed. R. Civ. P. 24(b)).  As discussed above, Correct Care's Motion is timely.  See supra at 18-19. Discovery has just begun, and the parties have filed no major motions.  Accordingly, neither the parties nor Correct Care will suffer any prejudice from Correct Care's intervention.  See Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *5 (concluding that a motion to intervene was timely, even though the plaintiff filed the case nearly a year before the intervenor sought to intervene, because "not much has occurred procedurally").  "[B]ecause the Court has not addressed any substantive issues, [and] the requested intervention will not prejudice the existing parties," rule 24(b)(3) does not prevent intervention.  Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *5

Similarly, rule 24(b)(1) suggests that the Court should allow intervention.  See Fed. R. Civ. P. 24(b)(1).  Correct Care shares a common defense with the Defendants: that no one violated A. Romero's civil rights.  See Motion at 3.  Whether someone violated A. Romero's civil rights constitutes one of the predominant questions of law and fact at issue.  See Complaint ¶¶ 59-129, at 7-14 (alleging that the Defendants violated A. Romero's civil rights).  Furthermore, practical considerations of judicial economy and trial convenience suggest that the Court should allow Correct Care to intervene.  See 6 Moore, supra, § 24.10[1], at 24-63 ("[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention."); Garza v. Cty. of L.A., 918 F.2d at 777.

Finally, Correct Care will contribute to this case, perhaps significantly.  Correct Care will be able to inform the Court about the medical care that its predecessor provided.  Although Curry County may have information regarding Correctional Healthcare's medical services, Correct Care -- as Correctional Healthcare's successor-in-interest -- will be able to expand more fully

upon the level of care provided.  This additional information will enable the jury or the Court to better ascertain whether the Defendants' provision of medical services violated A. Romero's civil rights.  Moreover, Correct Care will also shed light upon whether any alleged civil rights violations occurred as a result of Curry County's facilities or as a result of the medical care.  The Defendants will not likely raise the argument that any civil rights violations occurred as a result of the facilities alone, because Correct Care is purportedly liable in indemnity only for defective medical care.  See Email Demanding Indemnification at 1; Reply at 5.  The Court therefore concludes that Correct Care satisfies the requirements for permissive intervention under rule 24(b).  Accordingly, even if intervention as of right under rule 24(a) were not available to Correct Care, the Court would grant Correct Care permissive intervention under rule 24(b).

**IT IS ORDERED** that the Motion for Leave to Intervene, filed December 3, 2015 (Doc. 37), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Intervenor:*

Matthew E. Coyte
Coyte Law P.C.
Albuquerque, New Mexico

 *Attorney for the Plaintiff*

Dennis K. Wallin
Brandon Huss
Wallin, Huss, & Mendez, LLC
Moriarty, New Mexico

 *Attorneys for Defendants Board of County Commissioners for the County of Curry, Tori*
  *Sandoval, and Ecipio Lucero*

- 27 -

Luis E. Robles
Nicholas S. Autio
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant Gerry Billy*

Alfred A. Park
Lawrence M. Marcus
Park & Associates, LLC
Albuquerque, New Mexico

 *Attorneys for Intervenor*